SOUTH CORPORATION et al., Plaintiffs,

v.

UNITED STATES, Defendant.

Court No. 76–8–01816.

United States Court of International Trade.

Jan. 21, 1982.

Hinds & Meyer, Houston, Tex. (John K. Meyer, Houston, Tex., at the trial and on the briefs), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, New York City (Madeline B. Kuflik, New York City, at the trial and on the brief), for defendant.

RE, Chief Judge:

Plaintiffs sue to recover duties paid for foreign repairs on two of their vessels, M/V North Seal and M/V Atlantic Seal. The parties have stipulated that plaintiff, South Corporation, was the owner of the vessel M/V North Seal which departed Woods Hole, Massachusetts on July 18, 1972 and was on a foreign voyage until it returned to the port of Galveston, Texas on December 23, 1972. Repairs were made at Montego Bay, Jamaica, on December 2, 1972 and the repair entry was filed on April 5, 1973.

Plaintiff, Seal Fleet, Inc., was the owner of the M/V Atlantic Seal which departed New Bedford, Massachusetts in December 1970, and was on an overseas voyage until it returned to the United States port of Freeport, Texas, on May 29, 1973. Repairs were made on December 29, 1970, January 2 and 22, and February 9, 1971 in Ancona, Italy. The repair entry was filed on July 17, 1973.

The parties stipulated that at all material times on the voyages in question each of the vessels was engaged exclusively in oceanographic research; was designed and used primarily for purposes other than transporting passengers or property in the foreign or

coasting trade; and was documented under the laws of the United States with a certificate of registry.

After the foreign repairs were made and the vessels entered into the United States, pursuant to section 466(a) of the Tariff Act of 1930, as amended (19 U.S.C. § 1466(a)), duties of 50 per centum ad valorem were assessed on the cost of the repairs. This section provides for the imposition of duties on the cost of repairs made in a foreign country on vessels documented under the laws of the United States to engage, or vessels intended to be employed, in the foreign or coasting trade. Subsection (e) of section 466 of the Tariff Act of 1930, as amended (19 U.S.C. § 1466(e)), added as subsection (c) on January 5, 1971, and redesignated subsection (e) on October 3, 1978, provides for an exemption from repair duties for "any vessel designed and used primarily for purposes other than transporting passengers or property in the foreign or coasting trade" if certain specifically enumerated criteria are met.

The pertinent provisions of 19 U.S.C. § 1466(a) and (e) read as follows:

"§ 1466. Equipment and repairs of vessels

(a) Vessels subject to duty; penalties

The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country * *.

\*　　\*　　\*　　\*　　\*　　\*

(e) Vessels used primarily for purposes other than transporting passengers or property in the foreign or coasting trade

In the case of any vessel designed and used primarily for purposes other than

transporting passengers or property in the foreign or coasting trade which arrives in a port of the United States two years or more after its last departure from a port of the United States, the duties imposed by this section shall apply only with respect to (1) fish nets and netting, and (2) other equipments, and parts thereof, and repair parts and materials purchased, or repairs made, during the first six months after the last departure of such vessel from a port of the United States."

In addition to the stipulation of the parties, the defendant presented the testimony of Mr. Joseph A. Yglesias, Chief of the Merchant Vessel Documentation Division, United States Coast Guard. Mr. Yglesias explained the purpose for the documentation of vessels. He also testified that the certificates of registry issued for the vessels in question permitted them to engage in foreign trade, and that a certificate of registry establishes the nationality of the vessel upon which it relies in a foreign port.

The plaintiffs claim that the repair duty provisions of section 466(a) do not apply to the vessels in question since they were neither engaged in, nor intended to be engaged in, foreign trade. They maintain that these foreign repairs were not subject to the assessment of duties under section 466(a) regardless of the other provisions of section 466. In essence, plaintiffs submit that since the repairs were made to vessels that do not come within the scope of subsection (a), the provisions set forth in subsection (e) do not apply. Plaintiffs cite this court's opinion in *Corpus Co. v. United States*, 69 Cust.Ct. 170, C.D. 4390, 350 F.Supp. 1397 (1972), *appeal dismissed*, 60 CCPA 185 (1973), and urge that the repairs in question are not subject to the assessment of duties.

Over and beyond the statutory presumption of correctness found in 28 U.S.C. § 2635 (1976), defendant contends that the duties for foreign repairs performed on a vessel documented under the laws of the United States were properly assessed. The

defendant maintains that the congressional intent underpinning section 466 is to protect American shipyards and American labor from the competition of foreign shipyards, a longstanding policy with national defense implications, since American shipyards are used in time of war or emergency to supplement American naval yards.

Defendant further contends that the plain language of the statute leaves no doubt that oceanographic research vessels are included within the scope of subsection (e). In enacting that section as subsection (c), defendant maintains that Congress intended that oceanographic vessels come within the meaning of section 466 since they are expressly mentioned in the legislative history of subsection (c) as examples of "special service" vessels. See S.Rep.No. 91–1474, 91st Cong., 2d Sess., *reprinted in* [1970] *U.S.Code Cong. & Ad.News* 5910–11. Hence, defendant contends that foreign repairs on documented vessels are dutiable unless they meet the strict criteria of the limited exemptions.

The plaintiffs' reliance on the *Corpus* case requires careful consideration. In *Corpus*, a number of vessels had engaged in lengthy voyages outside the United States. At all times during their voyages they were engaged solely in oceanographic research. The vessels were not equipped to engage in foreign trade and were intended to engage solely in oceanographic research. During their respective voyages each vessel had undergone repairs in a foreign port and, upon reentry into the United States, was assessed with duties upon the foreign repairs pursuant to section 466 of the Tariff Act of 1930, in effect prior to January 1, 1971. Thus, the question presented in *Corpus* was whether foreign repairs on vessels documented to engage in foreign trade, but which in fact were engaged exclusively in oceanographic research, were properly subject to assessment pursuant to section 466 of the Tariff Act of 1930, as enacted prior to January 1, 1971. In *Corpus*, this court decided that "where a vessel does not engage in trade, is not intended to engage in trade, and indeed is physically incapable of engaging in trade, its repairs are not dutia-

ble under section 466." 69 Cust.Ct. at 176, 350 F.Supp. 1397.

This court, in the more recent decision of *Elizabeth River Terminals, Inc. v. United States*, 1 CIT—509 F.Supp. 517, (1981), examined the *Corpus* case and, in view of the 1971 amendment to the Tariff Act of 1930, rejected arguments similar to those being made here, stating:

"In *Corpus*, the foreign repairs were made 'during the period of 1966–1969,' and the court expressly stated that duties had been imposed under section 466 of the Tariff Act of 1930 'in effect prior to January 5, 1971.' *Id.* at 171 [350 F.Supp. 1397]. Clearly, therefore, as indicated by the defendant, the decision in *Corpus* was an interpretation and application of the language of section 466 *before* the 1971 amendment. In *Corpus*, the court examined prior decisions, and concluded that the pertinent cases closely scrutinized the actual and intended use of the vessel in determining whether the cost of foreign repairs was dutiable under the statute prior to the 1971 amendment. Consequently, it cannot be asserted that *Corpus* is dispositive of the present case which involves foreign repairs made on the *Cambria* in 1973 after the enactment of subsection (e) to section 466 in 1971." (Emphasis in original.) 509 F.Supp. at 521–22.

The following statements by the court in the *Elizabeth River* case are equally applicable here:

"To accept plaintiff's interpretation of section 1466 would mean that, in 1971, by enacting subsection (e), Congress enacted a subsection which, for special service vessels, either repeated or contradicted subsection (a) since, according to plaintiff's reading of the statute, special service vessels like the *Cambria* were not and are not subject to the duties provided for in subsection (a). Such a meaning would do violence to the basic principle of statutory interpretation and application that a court should give effect to all provisions of a statute. It cannot adopt a

meaning which would render a section or subdivision of a statute a mere redundancy. *See Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307–308, 81 S.Ct. 1579, 1582 [6 L.Ed.2d 859] (1961). Moreover, as stated by the United States Court of Customs and Patent Appeals, in construing different parts of a tariff act which appear to be in conflict it is the court's function to harmonize them so as to give each of them meaning, and achieve a result which was reasonably within the legislature's contemplation. [Citations omitted.] By interpreting 19 U.S.C. § 1466(a) and (e) so that special service vessels are subject to the duties provided for in subsection (a) unless they meet the specific conditions set forth in subsection (e), the court is implementing the stated Congressional intent, and also avoids any conflict between the two subsections of the statute." *Id.* at 523–24.

Thus, this court has previously considered and rejected the argument submitted by plaintiffs that documented vessels which do not engage in trade are never dutiable under section 466(a) of the Act. Although the addition of subsection (e) provides for a limited exemption from duties imposed in subsection (a), plaintiffs admit that these vessels do not meet the conditions set forth in subsection (e). Hence, they do not qualify for the exemption from foreign duty as provided in subsection (e).

■ It should be emphasized that the court in *Corpus* interpreted and applied a ship repair statute, which did not contain a subsection (e), against a background of cases of this court decided some thirty-five years prior[1] to the addition of subsection (e). Furthermore, it is now clear that the court's *dicta* in *Corpus*, pertaining to the meaning and import of the legislative history of subsection (e) as it related to section 466(a), were incorrect. As stated in the *Elizabeth River* case:

"In providing for the exemption, Congress manifested its understanding and intent that the special service vessels *were* subject to the duties imposed by section 1466(a); otherwise, there would have been no reason to amend section 466 of the Tariff Act of 1930 by including the exemption found in the present subsection (e).

The legislative history makes it clear that section 1466(e) was intended to relieve certain vessels from the duties imposed by section 1466(a), and that the newly granted relief was conditioned upon the prescribed prerequisites; i.e., that the repairs were made after the first six months of a vessel's voyage in foreign or international waters, and that the vessel's voyage in those waters last at least two years without the vessel returning to a United States port." (Emphasis in original.) 509 F.Supp. at 523.

■ It is clear from the statutory language of subsection (e) that Congress intended to exempt from duties the foreign repairs made on certain vessels which meet the conditions set forth in the statute. To adopt plaintiffs' interpretation of section 466 would be to disregard the plain language of the statute and a basic principle of statutory interpretation. In determining the meaning of terms enacted into law the court may, of course, resort to reports of hearings before the congressional committees which considered the legislation. *United States v. Kung Chen Fur Corp.*, 38 CCPA 107, C.A.D. 447, 188 F.2d 577 (1951), *Jos. Riedel Glass Works, Inc. v. United States*, 12 Cust.Ct. 173, C.D. 849 (1944), *aff'd*, 32 CCPA 201, C.A.D. 307 (1945). Reference has been made in the briefs to letters of the Treasury Department relied upon by Congress in adding subsection (e). However, statements and materials in briefs, as well as testimony presented at committee hearings, cannot in themselves be considered a guide to what Congress intended. Moreover, factual assertions in briefs, not founded upon evidence of record, have no evidentiary value. See authorities cited in *Tropi-Cal v. United States*, 63 Cust.Ct. 518, 521, C.D. 3945 (1969). See also *United States v. Fairfield Gloves*, 64 CCPA

---

1. See, e.g., *Standard Dredging v. United States*, 69 Treas.Dec. 239, T.D. 48136 (Cust.Ct.1936).

126, C.A.D. 1194, 558 F.2d 1023 (1977); *Consolidated Cork Corp. v. United States*, 58 CCPA 125, C.A.D. 1016, 438 F.2d 1241 (1971); *Gulf Gypsum Co. v. United States*, 20 CCPA 101, 107–08, T.D. 45725 (1932).

Plaintiffs refer to the Oceanographic Research Vessels Act (July 30, 1965), 79 Stat. 424, 46 U.S.C. §§ 441–445, and claim that it expressly grants exemption to oceanographic research vessels from the ambit of section 466(a). This contention requires a close examination of the purpose and effect of the Oceanographic Research Vessels Act and, in particular, section 443, which provides:

"§ 443. Vessel not engaged in trade or commerce

An oceanographic research vessel shall not be deemed to be engaged in trade or commerce."

Plaintiffs state that section 443 provides for an exemption from the duties on foreign repairs which are imposed by section 466(a) of the Tariff Act of 1930. It is urged that, since oceanographic research vessels are not to be deemed "engaged in trade or commerce," Congress intended to exclude them from the requirement of the foreign repair duty.

Defendant maintains that section 443 was enacted to exempt oceanographic research vessels from the application of certain vessel inspection laws relating to safety matters. The defendant stresses that oceanographic vessels are not exempt from liability under section 466 of the Tariff Act of 1930 since the legislative history of the 1971 amendment specifically mentions oceanographic vessels as an example of vessels which were to be included within the scope of the amendment.

In determining whether section 443 of the Oceanographic Research Vessels Act provides for an exemption for oceanographic vessels from the duties imposed by section 466(a) of the Tariff Act of 1930, the court must look to the language of both statutes *in pari materia*. It is to be noted that the Oceanographic Research Vessels Act is in Title 46 of the U.S. Code under the category of "Shipping," whereas the foreign vessel repair statute is part of the Tariff Act of 1930, in Title 19 of the U.S. Code which provides for "Customs Duties." The defendant indicates that although section 443 of the Oceanographic Research Vessels Act states that oceanographic research vessels shall not be deemed to engage in trade or commerce, that section does not say that the vessel shall not be documented to engage in foreign or coasting trade.

■ The objective of the legislative effort underlying the 1965 Oceanographic Research Vessels Act was to exempt research vessels from the strict inspection and personnel protection laws mandated for commercial crews which hindered the mission of technical or scientific personnel. The stated purpose of this statute is reflected in H.Rep.No.599:

"The purpose of this bill is to recognize, as a matter of law, that oceanographic research vessels, and the people working aboard them, while being engaged in specialized scientific work in the marine sciences, must necessarily be treated under *our regulatory and safety laws as being of different categories than other vessels and their personnel engaged in the usual pursuits of commercial passenger and cargo carrying.*

## BACKGROUND

Over the years *vessel inspection, manning, and other safety requirements* have been designed in behalf of the interests *of vessels and personnel engaged in normal commercial operations.* Within the last few years, however, *the United States has embarked upon broad-scale programs of research* and exploitative studies of all aspects of the marine environment under Government, institutional, and industry auspices. These are all in the national interest. They require specialized and, in many cases, *unique* vessels which to accomplish their missions must frequently depart from normal configuration. They *must carry scientists and trained technicians to carry out the objectives of the scientific cruises* into waters

all over the world under all conditions. They must be capable of, and *their personnel must be qualified by training, to meet with hazards beyond those to which commercial vessels and their complements might normally be exposed.*

*Under existing laws, scientific personnel, including students, carried on board a ship used in oceanographic research must be classified either as passengers or as members of the crew.* The administering agency in these matters is the U. S. Coast Guard. Being itself deeply involved in the national oceanographic program, the *Coast Guard has recognized the problem and has met many of the practical questions which have arisen in recent years through justifiable, but nevertheless expedient, interpretations and waivers.* As the program has developed and accelerated *these expedients are no longer either satisfactory or realistic.*

*This bill would, therefore, by making certain exemptions from existing laws, create a new category of 'oceanographic research vessels'* which would be defined as a vessel being employed exclusively in instruction in oceanography or limnology (the study of marine sciences in fresh water areas), or both, or exclusively in oceanographic research in all its aspects." (Emphasis added.) H.Rep.No.599, 89th Cong., 1st Sess., *reprinted in* [1965] *U.S. Code Cong. & Ad.News* 2383, 2384.

In 1971, by Pub.L.No. 91–654, Congress amended section 466 of the Tariff Act which provided for an exemption from repair duties for certain vessels which met the prescribed prerequisites. Although the amendment itself does not specifically provide for "oceanographic vessels," the legislative history of the section leaves no doubt that it was intended to apply to them. Indeed, the following excerpt from the "EXPLANATION OF COMMITTEE AMENDMENT" specifically mentions oceanographic vessels:

"Besides shrimp boats, the amendment would apply only to 'special service vessels', such as barges, oil drilling vessels, *oceanographic vessels*, which, like shrimp boats, in the course of their operations, cannot return to U.S. ports to secure the necessary repairs, without great inconvenience." (Emphasis added.) S.Rep.No. 91–1474, 91st Cong., 2d Sess., *reprinted in* [1970] *U.S.Code Cong. & Ad.News* 5910, 5911.

Since the amendment was enacted by Congress six years after the enactment of the Oceanographic Research Vessels Act, it is a fair inference that Congress did not intend to exempt oceanographic vessels from the foreign repair duty provision of section 466(a).

The interpretation sought by the plaintiff would upset a statutory plan prescribed by the tariff statutes. Hence, the court does not agree that Congress intended to exclude oceanographic research vessels from the specific requirements for exemption set forth in the 1971 amendment.

After a study of the pertinent sections and their legislative history, it is the conclusion of the court that Congress intended to include all documented vessels under section 466(a) of the Tariff Act of 1930, as amended, and to grant exemption to those which meet the conditions set forth in section 466(e) of that Act.

In view of the foregoing, it is the determination of this court that oceanographic vessels are special service vessels which are designed and used primarily for purposes other than transporting passengers and property in the foreign or coasting trade and are included within the scope of section 466(a) of the Tariff Act of 1930, as amended. Since the M/V North Seal and M/V Atlantic Seal are oceanographic vessels and were documented under the laws of the United States to engage in trade at the time the repairs were made, plaintiffs' action for the recovery of foreign repair duties must fail as the vessels do not qualify for the exemption provided for in section 466(e) of the Act.

Judgment will issue accordingly.