**SOUTH CORPORATION and Seal Fleet, Inc., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 82–19.**

United States Court of Appeals, Federal Circuit.

Oct. 28, 1982.

John K. Meyer, Houston, Tex., argued for appellants. With him on the brief was Hinds & Meyer, Houston, Tex.

Madeline B. Kuflik, New York City, argued for appellee. With her on the brief were Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., Director David M. Cohen, and Atty. in Charge Joseph I. Liebman, New York City.

Before MARKEY, Chief Judge, and · FRIEDMAN, RICH, DAVIS, BALDWIN, KASHIWA, BENNETT, MILLER, SMITH and NIES, Circuit Judges.

MARKEY, Chief Judge.

This appeal is the first to be heard, and this opinion the first to be published, by the United States Court of Appeals for the Federal Circuit, established October 1, 1982 by the Federal Courts Improvement Act of 1982, Pub.L.No.97–164, 96 Stat. 25.

The court sits in banc to consider what case law, if any, may appropriately serve as established precedent. We hold that the holdings of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, announced by those courts before the close of business September 30, 1982, shall be binding as precedent in this court.

Respecting the merits, South Corporation (South) and Seal Fleet, Inc. (Seal) appeal from a judgment of the United States Court of International Trade (Edward D. Re, Chief Judge), upholding the imposition of foreign repair duties under 19 U.S.C. § 1466(a).[1] We affirm that judgment, 531 F.Supp. 180.

## Background

The parties stipulated that the involved vessels were at all material times: (a) engaged exclusively in oceanographic research and intended solely for that purpose; and

1. That section provides in pertinent part:
 § 1466. Equipment and repairs of vessels
 (a) Vessels subject to duty; penalties. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country.

(b) designed and used primarily for purposes other than transporting passengers or property in the foreign or coasting trade.

South's vessel M/V NORTH SEAL departed the United States on July 18, 1972 and was on a foreign voyage until its return to the United States on December 23, 1972. Repairs costing $98.40 were made on December 2, 1972 at Montego Bay, Jamaica. Duty of $49.20 was assessed and paid under § 1466(a).

Seal's vessel M/V ATLANTIC SEAL departed the United States in December 1970. Repairs were made on December 29, 1970 and on January 2, January 22, and February 9, 1971, all at Ancona, Italy, at a total cost of $3,274.10. Duty totalling $1,637.05 was assessed and paid under § 1466(a).

South and Seal timely protested the duties. When Customs overruled the protests, South and Seal each filed an action for refund in the United States Court of International Trade. The court consolidated the causes and, holding that the repair duties were properly assessed and imposed, dismissed the consolidated action.

### Issue

The sole issue on the merits is whether error occurred in upholding imposition of repair duties under 19 U.S.C. § 1466(a).

### OPINION

I. *Choice of Governing Law.*

 As a foundation for decision in this and subsequent cases in this court, we deem it fitting, necessary, and proper to adopt an established body of law as precedent. That body of law represented by the holdings of the Court of Claims and the Court of Customs and Patent Appeals announced before the close of business on September 30, 1982 is most applicable to the

areas of law within the substantive jurisdiction of this new court. It is also most familiar to members of the bar. Accordingly, that body of law is herewith adopted by this court sitting in banc.[2]

To proceed without precedent, deciding each legal principle anew, would for too long deprive the bar and the public of the stability and predictability essential to the effort of a free society to live under a rule of law. As the Supreme Court said in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970):

> Very weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.

*Id.* at 403, 90 S.Ct. at 1789.

The considerations listed by the Court as underlying restraint upon the power to overrule are applicable equally to the power to start afresh. An orderly administration of justice would not be aided by the latter course. For every panel of judges of this court to examine anew every issue presented would be a practice devoid of counterbalancing advantage. Such an alternative, "start from scratch" approach would entail years of delay in constructing a body of law worthy of description as the law of the circuit. We choose therefore to begin on a readily available and clearly identifiable base, maintaining at the same time a con-

---

**2.** It is appropriate that the court adopt its substantive law precedents in a judicial decision accompanied by a published opinion. The Rules of the court are designed to provide procedural guidance and would be an inappropriate locale in which to repose the jurisprudential bases of the court's future decisions.

The present adoption does not affect the power of this court, sitting in banc, to overrule an earlier holding with appropriate explication of the factors compelling removal of that holding as precedent. If conflict appears among precedents, in any field of law, it may be resolved by the court in banc in an appropriate case.

trolled capacity for change when change is compelled.

The adoption of precedents here announced continues the stability in those areas of the law previously within the jurisdiction of our predecessor courts. That jurisprudence was established in great part by judges now members of this court. The public and the bar have presumably structured their legal affairs in accordance with that jurisprudence. To abandon it at this stage would be to cast the court, the public, and the bar adrift on a sea of uncertainty.

Other than that created by our predecessor courts, no body of law established by any other court or set of courts would appear a suitable candidate for adoption. No other such body would include all or as many of the areas of law with which this court will be dealing. In those areas new to this court, selection of one from many available bodies of law would require an immediate rush to resolution of numerous conflicts existing among them; yet resolution of conflict, a major element in this court's mission, requires not a one-shot selection but a careful, considered, cautious, and contemplative approach.

As a court of nationwide geographic jurisdiction, created and chartered with the hope and intent that stability and uniformity would be achieved in all fields of law within its substantive jurisdiction, we begin by adopting as a basic foundation the jurisprudence of the two national courts which served not only as our predecessors, but as outstanding contributors to the administration of justice for a combined total of 199 years, the Court of Claims and the Court of Customs and Patent Appeals.

II. *Imposition of Repair Duties under 19 U.S.C. § 1466(a).*

■ 19 U.S.C. § 1466(a) imposes a duty on repairs performed in a foreign country upon vessels documented under our laws "to engage in the foreign ... trade" or "intended to be employed in such trade." South and Seal concede that the present vessels are documented and are entitled to engage in trade, but contend that repairs to them are outside the scope of § 1466(a) because the phrase "to engage" means "for the purpose of engaging" and the vessels are not documented for that purpose.

The argument rests on a misconstruction of the dichotomy in the statute. It is, moreover, in conflict with the statute's legislative history.

Section 1466(a) plainly and unambiguously applies to repair of a vessel which is either documented to engage in trade *or* is intended to be employed in trade. South and Seal cite nothing in the legislative history that would indicate a congressional intent that "documented to engage" should be read as "documented for the purpose of engaging", if the latter phrase has a meaning different from that appearing in the statute.[3] Nor is there anything in the record to indicate that the vessel owner's individual "purpose" is in any manner relevant when a vessel is "documented to engage in foreign ... trade".

Moreover, an argument based on an effort to rewrite the statutory phrase "to engage" as "for the purpose of engaging" involves a disregard of the term "or" and the phrase "intended to be employed in such trade" in the statute. The particular purpose or intent of the vessel owner is not a part of the present documentation. That the owner of a vessel documented to engage in trade may elect not to so employ that vessel, or may never have intended so to employ it, is simply irrelevant. Intent appears in the statute only in relation to nondocumented vessels. The statutory provision is not concerned with vessels that are neither documented nor intended to engage in trade. Thus application of the concept of intended use to repairs on vessels documented to engage in trade *and* to repairs on vessels not documented to engage in trade

---

**3.** The argument is viewable as an effort to substitute a synonym. An authorization obtained "to" do something is indistinguishable from an authorization obtained "for the purpose of" doing the same thing. An intent not to do the thing authorized does not change the authorization.

would inject a new category into the statute, i.e., vessels documented only to engage in trade but not intended to be so engaged. The plain language of the statute, however, spells out a dichotomy between vessels "documented to engage in trade" (whatever may be the changeable purpose of the vessel owner) and vessels not documented but "intended to be employed" in trade.

Thus, once it is established that a vessel is documented only to engage in trade, inquiry into whether that vessel is also actually engaged in trade, or is also intended to be employed or engaged in trade, or into the vessel owner's purpose, is unnecessary and irrelevant. Though courts may disregard a term's literal meaning where it is evident that a special or limited meaning is necessary to effectuate the legislative intent, *Malat v. Riddell*, 383 U.S. 569, 571, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966), there is no such or similar basis here for requiring a disregard of the disjunctive meaning of the statutory term "or" and the clear division it makes in the statute between a category of vessels documented to engage in trade and a category of vessels not documented but intended to be employed in trade, or for requiring an application of the concept of intent or purpose to both the former *and* the latter categories.

Construing the similar phrasing of Section 22(b)[4] of the Agricultural Adjustment Act in *United States v. The Best Foods, Inc.*, 47 CCPA 163 (1960), the Court of Customs and Patent Appeals, finding the language of that section unambiguous and in accord with the legislative history, concluded that there is "no basis for construing the disjunctive 'or' in this statute as the conjunctive 'and'." *Id.* at 169. The court held

4. Section 22(b) provides in pertinent part:
 Sec. 22(b) If, on the basis of such investigation and report to him of findings and recommendations made in connection therewith, the President finds the existence of such facts, he shall by proclamation impose such fees ... of 50 percentum ad valorem or such quantitative limitations ....

5. *See* Senate Hearings on H.R. 2667, 71st Cong., 1st Sess., Vol. XVII at 537–46 (1929); S.Rep.No.37, 71st Cong., 1st Sess. 72 (1929); S.Rep.No.91–1474, 91st Cong., 2d Sess. (1970),

in that case therefore that Section 22(b) does not permit duties *and* quotas, just as we hold here that § 1466(a) does not permit the application of intent or purpose to trade-documented *and* non-trade-documented vessels.

Thus this case, turning as it does on an issue of statutory construction, is controlled by the interpretative approach of *Best Foods,* an earlier holding within the body of precedents adopted today. Though the court here sits in banc, and is thus positioned to overrule that holding, it perceives no reason so to do in this case.

■ Beyond the plain meaning of the statutory phrase "documented to engage in the foreign ... trade", its legislative history makes clear the intent of Congress. In enacting § 1466(a) Congress sought to protect and encourage American ship repair facilities.[5] Imposing duties for foreign repairs upon vessels which are *either* documented to engage in foreign trade *or* are non-documented but nonetheless intended to engage in trade, is wholly consistent with that intent. Thus, imposition of duties on repair of the vessels here involved, which are documented but not intended to be employed in trade is fully consistent with the purpose of the statute.

■ The registration, i.e., documentation, of a vessel is not compulsory. Properly documented American vessels are accorded benefits not otherwise available, 46 U.S.C. § 221,[6] but exemption from repair duties is not one of those benefits. South and Seal elected to document their vessels and thereby to acquire the benefits of documentation. An interpretation of the statute that

reprinted in U.S.Code Cong. & Ad.News 5910, 5912.

6. § 221 provides in pertinent part:
 § 221. Vessels of United States and officers defined; officers to be citizens
 Vessels registered pursuant to law and no others, except such as shall be duly qualified according to law for carrying on the coasting or fishing trade, shall be deemed vessels of the United States, and entitled to the benefits and privileges appertaining to such vessels ....

would enable avoidance of repair duties payable by owners of documented vessels would impermissibly expand the range of benefits provided for in § 221.

■ South and Seal rely on *Corpus Company v. United States,* 350 F.Supp. 1397 (1972), *appeal dismissed,* 60 CCPA 185 (1973), wherein the Customs Court (now the Court of International Trade), in applying § 1466 to documented oceanographic research vessels, said:

> Where a vessel does not engage in trade, is not intended to engage in trade and indeed is physically incapable of engaging in trade, its repairs are not dutiable under Section 466.

350 F.Supp. at 1402.

*Corpus Company* does not, of course, constitute precedent in this court. Whatever may have been the merits of the decision there rendered, the court in that case was construing § 1466 as ịᵥ existed before the addition thereto of subsection (e) in January 1971.[7] The present case involves repairs made after that date. In a more recent case, *Elizabeth River Terminals v. United States,* 509 F.Supp. 517 (1981), the Court of International Trade reexamined *Corpus Company* in light of the 1971 amendment and rejected the view that documented vessels which do not engage in trade are never dutiable under § 1466(a), pointing out that a contrary interpretation would violate rules of statutory interpretation. Chief Judge Re found the reasoning of *Elizabeth River* equally applicable to the present case and described as incorrect what he viewed as dicta in *Corpus Company* relating to the import of subsection (e)'s legislative history.

Moreover, enactment of § 1466(e) in 1971 manifested Congress' understanding that repairs to oceanographic vessels were subject to duty under § 1466(a). S.Rep.No.91–1474, 91st Cong., 2d Sess. (1970), *reprinted in* U.S.Code Cong. & Ad.News 5910, 5911, outlining the purposes of subsection (e), expressly included oceanographic vessels within the class of special service vessels intended to be exempt from repair duties if the length of absence from the United States and elapsed time before repair criteria of § 1466(e) are satisfied:[8]

### EXPLANATION OF COMMITTEE AMENDMENT

[T]he committee agrees with a recommendation of the Treasury Department that the relief from tariffs provided by this bill should be extended to noncargo carrying "special purpose" vessels.

. . . .

This amendment is intended to relieve from a 50-percent ad valorem tax on the value of repairs made, and equipment purchased, in foreign countries, those American shrimp *and other vessels* which must be away from U.S. ports for extended periods of time and which during the course of that time must make normal repairs . . . . Besides shrimp boats, the amendment would apply only to "special service vessels," such as barges, oil drilling vessels, *oceanographic vessels. . . .* [Emphasis ours]

South and Seal argue that Congress' understanding was based on mistake, and that the foregoing Senate Committee report merely reflects Congress' adoption of a mistaken representation of the Treasury Department that oceanographic vessels were at that time subject to and required

---

7. § 1466(e) provides:
 (e) Vessels used primarily for purposes other than transporting passengers or property in the foreign or coasting trade. In the case of any vessel designed and used primarily for purposes other than transporting passengers or property in the foreign or coasting trade which arrives in a port of the United States two years or more after its last departure from a port of the United States, the duties imposed by this section shall apply only with

respect to (1) fish nets and netting, and (2) other equipments, and parts thereof, and repair parts and materials purchased, or repairs made, during the first six months after the last departure of such vessel from a port of the United States.

8. South and Seal concede that those criteria are not satisfied with respect to the repairs involved in this case.

relief from payment of repair duties. The argument rests on two assumptions: (1) that Congress was unaware of earlier contrary holdings of the Court of International Trade; and (2) that Congress would necessarily have declined to exempt oceanographic vessels if it had been aware of those holdings. Because this court does not sit to correct alleged "mistakes" of Congress, the argument, were it soundly based, would necessarily fail.

The argument is not sound. It is true that at the time subsection (e) was under consideration, § 1466(a) had been construed by trial courts [9] as inapplicable to non-trading vessels. Congress, however, was certainly not bound to honor that construction. Assuming for the moment that Congress was unaware of those earlier court decisions, and that it adopted Treasury's view in ignorance of them, it cannot be further assumed that Congress, if things had been otherwise, would have adopted the judicial view and rejected that of Treasury.

■ As above indicated, correction of legislative mistakes, if mistake there be, is under our Constitution a matter left not to judicial but to legislative discretion, particularly where, as here, application of the statute as written does no violence to its clear legislative purpose. As the Court of International Trade recognized in *Elizabeth River*, supra, and in the present case, the amendment of the statute, giving a limited exemption to certain vessels, clearly demonstrated that Congress' purpose was to continue the dutiability of repairs to those vessels when the exemption criteria are not met.

■ Moreover, adoption of South's and Seal's construction of § 1466(a), under which repairs to their vessels could not under any circumstances have been dutiable in 1971, would impermissibly impute a useless act to Congress. That construction must

therefore be viewed as unsound and rejected. *See John B. Hewett Co. v. United States,* 48 CCPA 24 (1960). If § 1466(a) would not have imposed duties at any time for repairs to any non-trading vessel, there would have been no need in 1971 for exemption and Congress' enactment of subsection (e) with its specific criteria must accordingly have been an unnecessary and thus a useless act. Hence adoption of that construction would require a total disregard of the court's function as described in *Beaver Products Co. v. United States,* 17 CCPA 434 (1930), accord, *United States v. Corning Glass Works,* 586 F.2d 822 (Cust. & Pat. App.1978), i.e., to harmonize statutory tariff provisions in such manner as to preserve each provision and to achieve the legislature's purpose.

South and Seal seek to extend the holdings in *United States v. Western Operating Corp.,* 35 CCPA 71 (1947), and *United States v. American Whaling Co.,* 38 CCPA 164 (1951), in which recognition was given to the special statutory treatment of whaling vessels under R.S. § 4339 (46 U.S.C. 280). It was held that by virtue of that provision, whaling vessels were exempted from § 1466(a) regardless of documentation. Those decisions did no more than give effect to the express intent of Congress and cannot be read as precedent endorsing a general exemption for all non-trading vessels which hold documents entitling them to engage in foreign trade.

■ Finally, South and Seal say the Oceanographic Research Vessels Act (ORVA), 46 U.S.C. §§ 441–445, specifically § 443 [10] (oceanographic research vessels not deemed engaged in trade), removes those vessels from the ambit of § 1466.

We disagree. Enacted to exempt research vessels from strict inspection and personnel protection laws mandated for commercial crews, ORVA relates to safety

---

**9.** In addition to *Corpus Company,* supra, South and Seal cite *S. F. Bar Pilots Ass'n. v. United States,* 64 Treas.Dec. 682, T.D. 46787 (Cust.Ct. 1933) and *Standard Dredging Co. v. United States,* 67 Treas.Dec. 239, T.D. 48136 (Cust.Ct. 1936).

**10.** § 443 provides:

§ 443. Vessel not engaged in trade or commerce

An oceanographic research vessel shall not be deemed to be engaged in trade or commerce.

and personnel matters. It has been repeatedly held that statutes and regulations involving non-tariff matters, such as public safety, have no bearing upon statutes involving the assessment and imposition of duties. *United States v. Mercantil Distribuidora,* 43 CCPA 111 (1956); *International Spring Mfg. Co. v. United States,* 496 F.Supp. 279 (Cust.Ct.1980), *aff'd,* 641 F.2d 875 (CCPA 1981); *Pharmacia Laboratories v. United States,* 609 F.2d 491, 493 (CCPA 1979). Further, the argument rests on the fallacy that § 1466(a) applies only to repairs of documented vessels actually engaged in trade. Lastly, because ORVA was enacted six years before the addition of subsection (e) to § 1466, the foregoing discussion of the effect of that addition on interpretation of § 1466(a) is equally applicable here, i.e., to hold that ORVA had exempted repairs to oceanographic vessels would be to render the later enactment of subsection (e) a useless act.

### Conclusion

Because: (a) the statute provides for imposition of duties on repair of vessels documented to engage in foreign trade; (b) the vessels of South and Seal are so documented; (c) engagement or intended employment as non-trading vessels are considerations inapplicable to vessels so documented; (d) the vessels here involved do not meet the exemption criteria of § 1466(e); and (e) imposition of the present repair duties is consistent with the plain meaning of the statute and with its legislative history and purpose, the judgment appealed from must be and is *affirmed.*

AFFIRMED.