"This case, a suit for damages for breach of contract brought pursuant to the Tucker Act, 28 U.S.C. § 1491, is before the court on defendant’s motion to dismiss or, in the alternative, for a stay, and plaintiffs opposition thereto.
"Defendant contends that this suit should be dismissed, under 28 U.S.C. § 1500,[1] or stayed because action is still pending on a previous suit, City of Santa Clara v. Kleppe, 418 F.Supp. 1243 (N.D.Cal. 1976), which was initiated by the plaintiff and is based on the same nucleus of operative facts.
"Plaintiff responds by noting that the remedy sought here, money damages for breach of contract, is totally distinct from the declarative and injunctive remedies sought in the district court. Plaintiff further asserts the *891 impossibility of obtaining money damages from the Government in the amount sought here, possibly as much as $29.9 million, in the district court, 28 U.S.C. § 1346(b)(1976), and argues that defendant’s motions must be denied because the relief sought here could not be obtained elsewhere.
"We agree that plaintiff has, in the strictest legal sense, requested a remedy here that is unavailable in the district court, and that our jurisdiction over the matter is, therefore, not barred by § 1500. There are, however, unique circumstances in this case. Because these circumstances raise a sufficiently high probability of plaintiffs receiving monetary relief without our intervention, we believe that we should stay proceedings in this court pending resolution of the related case.
"Plaintiff here, and in the district court, is the City of Santa Clara (City), a municipal corporation which supplies its citizens with electrical power. In an effort to reduce the cost of this electricity, plaintiff repeatedly attempted, between 1961 and 1965, to contract directly with the producer of the energy it received, the Central Valley Project (CVP), a water conservation project owned and operated by the United States Government, the defendant here, through the Secretary of the Interior, who was the defendant in plaintiffs district court action. The direct contract sought by plaintiff would have eliminated the 'middle-man,’ Pacific Gas and Electric (PG&E), a utility company which purchased power from CVP, transmitted and resold it to the City at six times the initial cost.
"Finally, on November 30,1965, the City and CVP signed a contract in which the CVP agreed to sell its excess power to the City on a temporary basis. This original agreement was amended several times, with each amendment increasing the electricity available to the City and expressly reserving the right to withdraw the same amount at any time with proper notice.
"In August of 1971, the CVP began unilaterally to make such withdrawals. As a result of these withdrawals, the City was again forced to purchase its power from PG&E at six times the cost. The City, however, alleging that the CVP had breached its contract, refused to pay the *892 additional sums to PG&E. Instead, it paid the money into an escrow account[2] pursuant to two escrow agreements with PG&E. In the latter of these two agreements, dated December 16, 1975, the City and PG&E agreed that their respective rights to the monies held in escrow should be determined by the outcome of a suit which the City had recently filed against the Secretary of the Interior in the United States District Court for the Northern District of California. In that action, City of Santa Clara v. Kleppe, 418 F.Supp. 1243 (N.D. Cal. 1976), the City had asked the court to declare that it had the right to receive CVP power and that it had, in fact, been using CVP power rather than PG&E power. The City also requested the court to enjoin the CVP from refusing further to allocate power to the City. The practical result, had the court granted the declarative and injunctive relief requested, is that the City would also have received, from the escrow account, money sufficient to compensate for any damages it suffered as a result of the Government’s alleged breach of contract.
"The district court, however, neither granted nor denied the relief requested. Instead, it remanded the entire power allocation scheme for the region back to the Department of the Interior for further consideration and ordered the Department to grant to the City certain procedural due process rights which had been abridged in the first proceedings. Both parties have appealed this remand to the United States Court of Appeals for the Ninth Circuit.
"After it became apparent that its district court action would not quickly reach the desired resolution, the City brought suit here requesting money damages from the Government for breach of contract. The Government asserts that jurisdiction here is barred by § 1500 because final action is still pending in the district court case.
"We cannot agree with the Government’s position. Although plaintiffs claim here is based on the same governmental action as is its suit in the district court, plaintiff has, in a strict legal sense, requested a remedy here that is totally unavailable in district court, payment of money damages in excess of $10,000 by the Government *893 for breach of contract. We do not believe that plaintiff should be denied the right ever to claim money damages merely because it also seeks to enjoin the Government from future power allotment violations by requesting injunctive relief in district court. See Casman v. United States, 135 Ct.Cl. 647 (1956). We conclude, therefore, that jurisdiction in this court is not precluded by 28 U.S.C. § 1500.
"However, the unique aspect of this case, the existence of an escrow account and the agreement between the City (plaintiff) and PG&E, make it probable that the practical effect of a district court decision in plaintiffs favor would be a substantial money recovery by the plaintiff. Such a money recovery could render the question of money damages moot and make further proceedings in this court unnecessary.
"Plaintiff did choose to initiate its litigation in the district court. It structured its escrow relationship with PG&E so that a final decision of that court in plaintiffs favor would, in all likelihood, result in a money recovery by the plaintiff. The district court, in its wisdom, has initiated a process which, though time-consuming, is calculated to bring about a just resolution. Any attempt on our part to resolve plaintiffs claim at this time would result in our hearing the same arguments on many of the same issues as did the district court. The possibility of inconsistent judicial resolution of similar legal issues would then exist and the dual proceedings could result in unfair burden to the defendant, an unnecessary crowding of this court’s docket, and general administrative chaos. We do not believe it to be in the best interests of comity, justice or judicial administration for us to "leap in” at this point. Cf. Tecon Engineers, Inc. v. United States, 170 Ct.Cl. 389, 394, 343 F.2d 943, 946 (1965), cert. denied 382 U.S. 976 (1966), (Where jurisdiction concurrent, comity requires that court of first filing should proceed to resolution); PPG Industries v. Continental Oil Co., 478 F.2d 674, 680 (5th Cir. 1973), Federal court stays proceedings pending resolution of parallel litigation in state court).
"For the reasons discussed above, we conclude that defendant’s motion to dismiss for lack of jurisdiction should *894 be denied, but that its alternative motion to stay these proceedings pending the outcome of the litigation currently being pursued in the district court should be granted.
"It is hereby ordered, upon consideration of the pleadings, defendant’s motions and plaintiffs opposition thereto, without oral argument, that defendant’s motion to dismiss is denied and that defendant’s motion to stay these proceedings is granted. These proceedings are stayed and counsel for the parties are ordered to notify this court of the judgment of the district court, within ninety days of the date it becomes final, and to file appropriate motions with this court at that time.”

 28 U.S.C. § 1500 reads in pertinent part:
The Court of Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States ....

 As of March 1, 1977, this escrow account showed a balance of $29,992,770.22.