**JOHNS–MANVILLE CORPORATION
and Johns–Manville Sales
Corporation, Plaintiffs–Appellants,**

v.

**The UNITED STATES,
Defendant–Appellee.**

No. 87–1332.

United States Court of Appeals,
Federal Circuit.

Aug. 25, 1988.

Harvey G. Sherzer, Howrey & Simon, Washington, D.C., argued, for plaintiffs-appellants. With him on the brief, were Robert M. Bruskin, Barbara A. Duncombe and John R. Alison. Also on the brief, were Robert D. Batson and Nancy E. Stead, Manville Corp., Littleton, Colo., of counsel.

Harold J. Engel, Deputy Director, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief, were John R. Bolton, Asst. Atty. Gen., J. Patrick Glynn, Director and David S. Fishback, Sr. Trial Counsel.

Robert M. Chilvers, Brobeck, Phleger & Harrison, San Francisco, Cal., represented the amicus curiae, Fibreboard Corp. Also on the brief, was Ann T. Olson, Brobeck, Phleger & Harrison, San Francisco, Cal., of counsel. Paul A. Zevnik, Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., represented the amicus curiae, GAF Corp. With him on the brief, were David O. Bickart and Molly D. Current. Also on the brief, were Max Gitter and Stuart M. Cobert, Paul, Weiss, Rifkind, Wharton & Garrison, New York City and John P. Carey, Paul, Hastings, Janofsky & Walker, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, RICH and ARCHER, Circuit Judges, and NICHOLS and BENNETT, Senior Circuit Judges.

PER CURIAM.

This is an appeal from an interlocutory order of the United States Claims Court (Nettesheim, J.), entered April 6, 1987, and reported as *Keene v. United States*, 12 Cl.Ct. 197 (1987). The Claims Court granted a motion by the United States to dismiss three suits, Nos. 465–83C, 688–83C, and 1–84C, brought by Johns–Manville Corporation and Johns–Manville Sales Corporation (Johns–Manville).[1] The Claims Court certified the order for immediate appeal pursuant to 28 U.S.C. § 1292(d)(2) (1982). Johns–Manville's petition for review was granted on May 6, 1987. We affirm.

## BACKGROUND

The motion to dismiss was made in response to a *sua sponte* order, entered January 20, 1987. The order required the United States to state its position on the applicability of 28 U.S.C. § 1500 (1982). In its present form section 1500 states:

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

### I. *Cases Filed and Theories of Relief*

The three cases dismissed by the order on appeal were filed in the Claims Court as test cases which were representative of thousands of separate claims. *See Keene,* 12 Cl.Ct. at 201. In each of the three cases Johns–Manville seeks indemnification from the United States for Johns–Manville's liabilities to shipyard workers who were exposed to asbestos manufactured by Johns–Manville and sold to the United States. Each case covered a different time period.

---

1. The government's motion to dismiss included the cases filed by several other asbestos manufacturers. An order entered February 13, 1987, limited the initial ruling on defendant's motion to the three Johns–Manville cases since case No. 465–83C was scheduled to begin trial. *See Keene,* 12 Cl.Ct. at 198–99 n. 1.

In *Johns–Manville Corp. v. United States*, No. 465–83C (Cl.Ct. filed July 19, 1983), Johns–Manville seeks indemnification for its actual or potential liabilities for injuries to shipyard workers exposed to asbestos during World War II (WWII). The theories of relief are (1) breach of an implied warranty of specifications, (2) breach of a duty to reveal superior knowledge, (3) reformation of the contract due to mutual mistake of material facts, and (4) equitable adjustment.[2]

The second suit, *Johns–Manville Corp. v. United States*, No. 688–83C (Cl.Ct. filed Nov. 16, 1983), demands indemnification for actual or potential liabilities to workers injured by exposure to asbestos after 1963. Johns–Manville raises the same theories of relief raised in No. 465–83C and additionally raises (1) breach of warranty to use products safely arising from control by the United States of the specifications and conditions of use, (2) rights as an intended and third-party beneficiary of the supply contracts, and (3) breach of an additional implied-in-fact contract to indemnify, arising out of the government's requirement of contract compliance and its control of the asbestos products. The third complaint, *Johns–Manville Corp. v. United States*, No. 1–84C (Cl.Ct. filed Jan. 3, 1984), seeks indemnification for Johns–Manville's liabilities to workers injured by exposure to asbestos during unrestricted or overlapping time periods. The complaint repeats the theories raised in No. 465–83C and, additionally, alleges the implied contract to in-

demnify applies to later "rip-out" operations under the exclusive control of the United States.

Prior to filing in the Claims Court, Johns–Manville filed indemnification claims in district courts. *Johns–Manville Sales Corp. v. United States*, No. C81 4561 RFP (N.D.Cal. filed Dec. 7, 1981) (the Robinson case), seeks indemnification for amounts paid for defense and settlement of an action brought by John C. Robinson for injuries allegedly due to exposure to asbestos products sold to the United States by Johns–Manville.[3] The complaint pleads jurisdiction and rights of recovery under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1976). The legal theories of relief raised are (1) negligence in discharge of the duties of the United States as a vessel owner in the use of asbestos products, (2) negligence in breach of implied warranties that Johns–Manville would not be liable for damages resulting from compliance with the specifications and that the products would be used in a safe manner, and (3) negligence in failing to reveal superior knowledge of the dangers of asbestos.

Prior to filing in the Claims Court, Johns–Manville also filed 59 third-party complaints in the Eastern District of Virginia.[4] In those actions Johns–Manville and other asbestos manufacturers seek indemnification from the United States if the manufacturers are found liable for asbestos exposure injuries to the plaintiffs. Johns–Manville pleads (1) breach of war-

**2.** Johns–Manville's original complaint had 10 legal theories, but one was dropped and all but four of the remaining theories were dismissed upon the government's motion. *Keene*, 12 Cl.Ct. at 203.

**3.** Johns–Manville also filed indemnification actions in district courts after filing in the Claims Court. The Claims Court order in the instant appeal ruled on this issue and the United States petitioned to appeal that ruling. On June 11, 1987, we granted the government's motion to withdraw its petition for permission to appeal. Since the issue of after-filed claims is no longer contested and since it is not essential to the disposition of the rest of the appeal, we do not consider it nor do we consider the arguments relating to *Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943, 170 Ct.Cl. 389 (1965), *cert. denied*,

382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). Johns–Manville insists the Robinson case is an after-filed case because two of its original claims were dismissed and then the complaint was amended after the Claims Court case was filed and, therefore, cannot be referenced in this appeal as triggering section 1500. We have considered its arguments and find them without merit. *See* Fed.R.Civ.P. 15(c).

**4.** *E.g.*, *Sacks v. Johns–Manville Corp.* No. 81–436–N (E.D.Va. filed May 15, 1981). On the same theories as in the Robinson case, Johns–Manville also filed an indemnification suit in the Western District of Washington, *Johns–Manville v. United States*, No. C83–798T (W.D. Wash. filed Oct. 15, 1982). It was dismissed for lack of prosecution on September 27, 1984.

ranties of safe use, merchantability, and fitness for a particular purpose and (2) breach of duty to maintain a safe work place and to enforce health standards.

## II. *Facts Pleaded*

In the Robinson case, Johns–Manville alleges as facts that the United States (1) compelled Johns–Manville to enter the supply contracts, (2) controlled the products by requiring compliance with the government's specifications, (3) controlled the conditions of use of the products, (4) controlled access to the shipyards, (5) did not enforce its established safety standards, (6) knew of the health risks caused by lack of enforcement of the safety standards, (7) knew or should have known of the potential liability to Johns–Manville caused by the failure of the United States to enforce safety standards, and (8) Robinson was exposed to excessive concentrations of asbestos.

The factual allegations in the Claims Court cases overlap the factual allegations in the Robinson case and the third-party complaints. They all allege (1) the United States compelled compliance with supply contracts and with the Navy's specifications, (2) the United States had control of the shipyard working conditions, and (3) the United States established safety standards in the shipyards but did not follow them.

## *Issues on Appeal*

Whether the trial court erred in holding:

1. a prior-filed district court suit presents the same "claim for or in respect to" an action filed in the Claims Court by the same plaintiff where each action is based on the same operative facts but different theories of relief.
2. a prior-filed, stayed suit is pending for purposes of barring jurisdiction in the Claims Court under 28 U.S.C. § 1500.

## OPINION

This is a case of statutory construction. The disposition of the issues before this court requires determining the proper ap-

plication of 28 U.S.C. § 1500, quoted above. Particularly in issue is the operation of the phrase "any claim for or in respect to which the plaintiff ... has pending...." We will first discuss the part of the phrase reading "any claim for or in respect to" and then discuss the term "pending."

### I. *Interpretation of "any claim for or in respect to"*

#### A. Operative Facts versus Theories of Recovery

1. *Legislative History:*

 Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 27 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin*, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed. 2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States*, 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States*, 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

Not all of these rules of statutory construction are helpful in construing section 1500. Under the rule expressed in *Grey-*

*hound* we must first look to the language of the statute. To reiterate, in its present form this statute states:

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

The rules expressed in *Colautti* and *Aaron* teach us what to look for in considering the language. First, we look for any express definitions within the statute. There are none. Second, we consider whether the language has a plain meaning. We are seeking to construe the phrase "any claim for or in respect to." The key word requiring interpretation is "claim." However, the word "claim" has no one meaning in the law. *See* Black's Law Dictionary 313 (4th ed. rev. 1968); 7 Words & Phrases 445 (1952) (defining "claim"). Section 1500 states "[t]he United States Claims Court shall not have jurisdiction of any claim ... which the plaintiff ... has pending ... against the United States or any person who, ... when the cause of action ... arose...." Thus, "claim" and "cause of action" are used interchangeably. However there is also no one meaning in the law for "cause of action." *See* Black's Law Dictionary 279 (4th ed. rev. 1968); 6 Words & Phrases 581 (1966) (defining "cause of action").

Lacking a plain meaning or an express definition we must look for a clear legislative intent as required by *National Railroad*. Evidence of legislative intent as to the precise meaning of "claim" is scarce. What is now 28 U.S.C. § 1500 was originally adopted as follows:

Sec. 8. *And be it further enacted,* That no person shall file or prosecute any claim or suit in the [C]ourt of [C]laims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending any suit or process in any other court against any officer or person who, at the time of the cause of action alleged in such suit or process arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act.

Act of June 25, 1868, 15 Stat. 77. Senator Edmunds, the author of the bill, explained the section as follows:

The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.

81 Cong.Globe, 40th Cong., 2d Sess. 2769 (1868).

Neither the original version of section 1500 nor Senator Edmunds' explanation gives an express definition of "claim." The intent can be inferred, however, from the subject matter jurisdictions of the Court of Claims and the district courts in 1868 when the original version of section 1500 was enacted. In 1868 the Court of Claims had exclusive jurisdiction over claims against the United States. Act of Mar. 3, 1863, ch. 92, 12 Stat. 765; *see infra* note 8. Its jurisdiction was limited to claims upon an Act of Congress, upon regulations made pursuant thereto, or upon a contract with the United States, express or implied. *Id.* The district courts still had jurisdiction over common law claims against officers of the United States. As stated by Senator

Edmunds the purpose of the section was "to put to their election ... persons having cotton *claims* ... who have sued the ... agents of the Government in more than a hundred suits ... scattered over the country ... and at the same time endeavoring to prosecute their *claims* ... in the Court of Claims...." 81 Cong.Globe, 40th Cong., 2d Sess. 2769 (emphasis added). Thus, Senator Edmunds, the author of the bill, inferentially defined claims to include both the actions pending in district courts and the actions filed in the Court of Claims. Due to the then existing subject matter jurisdiction, a plaintiff could not have brought his cotton claims in both courts on the same legal theory. He would have brought his action in the Court of Claims against the United States under an Act of Congress, the Captured and Abandoned Property Act of 1863,[5] and he would have brought his action in a district court against the Secretary of the Treasury or other agent of the United States under a tort theory, e.g., conversion[6] or tortious interference of a contract if the government had taken the property while in the possession of a lessee. Thus, by virtue of Senator Edmunds' explanation of the section to the Senate and the then-existing subject matter jurisdiction of the Court of Claims versus the district courts, the term "claims" could not have referred to legal theories.[7]

The remaining legislative history is devoid of any evidence indicating the legislature's intended purpose of section 1500. In 1874 section 8 of the Act of June 25, 1868, was incorporated in the Revised Statutes of

1874, section 1067. Congress made changes in phraseology but Congressman Butler stated:

We have not attempted to change the law, in a single word or letter, so as to make a different reading or different sense. All that has been done is to strike out the obsolete parts and to condense and consolidate and bring together statutes *in pari materia;* so that you have here, except insofar as it is human to err, the laws of the United States under which we now live.

Remarks of Representative Butler, 2 Cong. Rec., 43d Cong., 1st Sess. 129 (1873). The version in the Revised Statutes was then adopted without change as section 154 of the Judicial Code of 1911. Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138. In 1948 the language was changed to include pending suits against the United States as well as suits pending against agents of the United States. Act of June 25, 1948, ch. 646, 62 Stat. 942. Lastly, in 1982 the section was amended to continue coverage in the newly formed Claims Court. 28 U.S.C. § 1500 (1982).

In summary, as indicated by the author of the original version of section 1500, the intent of Congress was not to define "claims" to mean legal theories. Such a definition would have rendered the section ineffective since the cotton claims towards which the section was originally aimed could not have been brought on the same theory in 1868 in both the Court of Claims and the district courts.[8] Nothing in the

---

**5.** Ch. 120, § 3, 12 Stat. 820. ("And any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof *in the [C]ourt of [C]laims; ....*") (Emphasis added.)

**6.** *See* Schwartz, *Section 1500 of the Judicial Code and Duplicative Suits Against the Government and Its Agents,* 55 Geo. L.J. 573, 577 (1967). Tort actions could not be brought against the United States before the enactment of the Federal Tort Claims Act, Act of Aug. 2, 1946, ch. 753, title IV, part 3, §§ 410(a), 411, 60 Stat. 843–44.

**7.** Though, as indicated by Senator Edmunds, the section was originally aimed at cotton claims from the Civil War, its application has never been limited to cotton claims. Cotton claim actions were only allowed for 2 years from the end of the Civil War. Act of Mar. 3, 1863, ch. 120, § 3, 12 Stat. 820. Congress chose not to limit the duration of the original version of section 1500 to correspond with the 2–year limitation on cotton claims. Instead it was made permanent legislation and was amended over the years and as recently as April 2, 1982, 96 Stat. 40, to assure its continuing applicability from the Court of Claims to the Claims Court.

**8.** The Act of Mar. 3, 1887, ch. 359, § 2, 24 Stat. 505, first gave district courts partial concurrent

legislative history of the revisions of the original version is to the contrary. Under the rule of statutory construction stated in *Lorillard* and other cases cited above, and since all changes after the original version were intended as but changes in phraseology, we must presume Congress was aware of and adopted the judicial interpretations of section 1500 and its predecessors.

### 2. *Judicial Precedents:*

■ The purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time. *Wessel, Duval & Co. v. United States*, 124 F.Supp. 636, 637–38, 129 Ct.Cl. 464 (1954); *Frantz Equip. Co. v. United States*, 98 F.Supp. 579, 580, 120 Ct.Cl. 312 (1951). The Court of Claims repeatedly applied section 1500 consistently with this purpose. This court is bound by the decisions of the Court of Claims. *South Corp. v. United States*, 690 F.2d 1368, 1369, 1 Fed.Cir. (T) 1, 1, 215 USPQ 657, 657 (Fed.Cir.1982). The decision in *British American Tobacco Co. v. United States*, 89 Ct.Cl. 438 (1939), *cert. denied*, 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940), best states the Court of Claims interpretation of the term "claim" in section 1500. In that case plaintiff sought to recover damages or compensation for gold bullion surrendered to the Federal Reserve Bank pursuant to Executive orders and regulations. The plaintiff had filed both in the district court on a conversion theory and in the Court of Claims on a theory of taking property without just compensation. The Court of Claims dismissed the suit under section 154 of the Judicial Code [now 28 U.S.C. § 1500] and reasoned:

> The only distinction between the two suits instituted in the District Court and in this court is that the action in the District Court was made to sound in tort and the action in this court was alleged on contract. The facts existing and operating in both cases are the same. A recital of the operative facts relied upon by a claimant does not state two separate

and distinct causes of action merely because such facts may set up a liability both in tort and contract.... We think it is clear that the word "claim," as used in section 154 [now 28 U.S.C. § 1500], supra, has no reference to the legal theory upon which a claimant seeks to enforce his demand.... The legislative history of section 154 of the Judicial code ... supports these conclusions. 89 Ct.Cl. at 440.

The Court of Claims again considered the interpretation of the term "claim" in section 1500 in *Los Angeles Shipbuilding & Drydock Corp. v. United States*, 152 F.Supp. 236, 138 Ct.Cl. 648 (1957). There the plaintiff brought two actions for recovery of income and excess profits taxes. The first action was brought in the Southern District of California and the second in the Court of Claims. The district court action claimed a refund was due for the years 1940, 1941, 1942, 1943, and 1946. The Court of Claims action claimed a refund for years 1940 and 1941. *Los Angeles* held section 1500 barred its jurisdiction of the action on the ground that the same claim was pending in the district court. *Id.* at 237–38. The court reasoned it was not relevant that the district court action was brought under the theory of overpayment of taxes and the Court of Claims action was brought under a theory of account stated. The court stated, "[t]he *claim* involved is for the refund of taxes and that claim is before both courts. The theory advanced to sustain the *claim* is quite another matter and not determinative of the jurisdiction of this court." *Id.* at 238 (emphasis in original).

■ Both the decision in *British American* and the decision in *Los Angeles* are explicit in their interpretation of the term "claim" in section 1500. Both reject the argument that "claim" is based on legal theories. Both hold "claim" to be defined by the facts. *British American* specifically applied this interpretation to a case in-

---

jurisdiction with the Court of Claims. *See Bates Mfg. Co. v. United States*, 303 U.S. 567, 571, 58

S.Ct. 694, 696, 82 L.Ed. 1020 (1938).

volving tort and contract theories, the same theories raised in the instant appeal. A contrary interpretation would defeat the intent of Congress and would allow a plaintiff to bring duplicative actions on the same operative facts. "The possibility of inconsistent judicial resolution of similar legal issues would then exist and the dual proceedings could result in unfair burden to the defendant, and unnecessary crowding of this court's docket and general administrative chaos." *City of Santa Clara v. United States,* 215 Ct.Cl. 890, 893 (1977).[9] Accordingly, we construe the term "claim" in 28 U.S.C. § 1500 to be defined by the operative facts alleged, not the legal theories raised.

■ Given this construction of section 1500 we must apply it in the instant appeal. That is, do the same operative facts exist in the Robinson case or the Eastern District of Virginia third-party complaints and the Claims Court case Nos. 465–83C, 688–83C, and 1–84C? Both the complaint in the Robinson case and the complaint in Claims Court No. 465–83C allege the following: (1) the specifications of the United States required asbestos in the insulation products; (2) Johns–Manville was compelled to perform the supply contracts with the United States; (3) the United States controlled the shipyard working conditions; (4) the United States restricted access to the shipyards; (5) the United States implicitly agreed not to hold Johns–Manville liable for damages where the products were made according to the specifications; (6) the United States had a duty to enforce standards for limiting exposure to asbestos; (7) the United States had a duty to disclose its knowledge of the shipyard working conditions; (8) the United States knew of the dangers of asbestos exposure; (9) the United States failed to disclose information regarding

shipyard working conditions; and (10) Johns–Manville is not liable for acts or omissions of the United States. Additionally, all the complaints, i.e., the Robinson case, the third-party complaints, and all the Claims Court cases seek recovery for costs and expenses incurred and other damages connected to suits brought by shipyard workers against Johns–Manville, alleging injury from exposure to asbestos.

The operative facts which support the several legal theories raised are therefore the same. The fact that Robinson was exposed to asbestos after 1963 rather than in WWII does not negate this. The motion of the United States to dismiss and the Claims Court's order of April 6, 1987, granting that motion, were with regard to Claims Court case Nos. 465–83C, covering exposures during WWII; 688–83C, covering post-1963 exposures; and 1–84C, covering exposures during a mixture of the two time periods. Thus, Nos. 688–83C and 1–84C both cover exposures in the time period of the Robinson case. No. 465–83C also presents the same claim as the Robinson case due to the overlap of operative facts. In both cases the asbestos causing the injuries was sold to the United States under WWII supply contracts. It matters not that in No. 465–83C the exposure resulted from installing the asbestos and in the Robinson case the exposure resulted from removing the asbestos. In both cases Johns–Manville bases legal theories of recovery on the allegations that (1) the United States set a safety standard of limits to asbestos exposure at five million particles per cubic foot, (2) the United States had a duty to enforce this standard, (3) the United States did not enforce this standard, and (4) this breach to enforce the exposure standards was a cause of injuries to shipyard workers. Lastly, Johns–Manville agreed to try

9. In *Santa Clara* the motion to dismiss under section 1500 was denied and the proceedings instead were stayed pending outcome of the district court case. However, this is not in conflict with the decisions in *Los Angeles* and *British American* since it follows the recognized exception stated in *Casman v. United States,* 135 Ct.Cl. 647 (1956); *accord Truckee–Carson Irrigation Dist. v. United States,* 223 Ct.Cl. 684 (1980). Under *Casman,* section 1500 is inapplicable where only injunctive relief is sought in the district court. The court in *Santa Clara* did not proceed with the action as *Casman* dictates, however, since due to unique circumstances the outcome of the district court case could have resulted in funds from an escrow account (established extrajudicially) being released to the plaintiff, thus effectively duplicating the monetary award sought in the Court of Claims.

case No. 465–83C as a test case and therefore to be bound in certain other cases by the decision in 465–83C. *Johns–Manville v. United States,* 13 Cl.Ct. 72, 76–77 (1987).[10] Thus, the specific facts alleged by claimants in No. 465–83C were not so significantly different as to warrant separate trials for each indemnification action in the Claims Court. Certain other asbestos manufacturers have likewise agreed to be bound by the decision in No. 465–83C. *See Johns–Manville,* 13 Cl.Ct. at 76–77; *Keene Corp.,* 12 Cl.Ct. at 211.

Johns–Manville argues the claims are not the same since a tort theory will require different elements of proof than a contract theory. There are at least two answers to this. First, elements of proof are only relevant once a legal theory has been chosen. As previously discussed, the term "claim" in section 1500 "has no reference to the legal theory upon which a claimant seeks to enforce his demand...." *British American Tobacco Co.,* 89 Ct.Cl. at 440. Since the legal theory is not relevant, neither are the elements of proof necessary to present a prima facie case under that theory. Second, the Court of Claims in *Los Angeles* expressly rejected this argument of appellant. *See Los Angeles,* 152 F.Supp. at 237–38.

In the latter case, the plaintiff argued section 1500 was not applicable since the proof required in each court would be different. In the district court, under the theory of overpayment of taxes, the proof would relate to the correctness of the characterization of many items as being or not being income or expenses. In contrast, the proof in the Court of Claims, under the theory of an account stated, would relate to the existence of an agreement resolving conflicts between the plaintiff and the Commissioner of Internal Revenue. The court rejected plaintiff's argument on the ground the claims were both the same, the refund of taxes, regardless of the different theories or different elements of proof. Accordingly, we also reject this argument.

**B. The Effect of Involuntary Election**

■ Johns–Manville argues that section 1500 is not applicable where the plaintiff cannot elect to bring all its theories of recovery in one court. In the instant appeal both tort and contract theories cannot be brought in one court, since the district courts have exclusive jurisdiction of tort actions against the United States and the Claims Court has exclusive jurisdiction of contract actions exceeding $10,000 against the United States.[11] 28 U.S.C. §§ 1346(a)(2), (b), 1491 (1982). However, the legislative history and the cases indicate section 1500 was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts. *See supra* statement of Senator Edmunds, author of the original version of section 1500, stating "[t]he object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts." *See also Brown,* 358 F.2d at 1005; *Casman,* 135 Ct.Cl. at 649.

The Court of Claims held in *Wessel,* 124 F.Supp. at 638, that a plaintiff has no vested right to proceed in two courts. In *Wessel,* as in the instant appeal, the plaintiff filed in two courts alleging jurisdiction under two separate Acts of Congress [12] arising from the same operative facts. As in the instant appeal, the plaintiff in *Wessel* argued section 1500 should not bar the Court of Claim's jurisdiction under 28 U.S.C. § 1491. That is, section 1500 should

---

**10.** Claims Court case No. 465–83C is based on four test shipyards and 15 test claimants (shipyard workers), five of whom were exposed to asbestos in shipyards after WWII. *Johns–Manville,* 13 Cl.Ct. at 77.

**11.** Johns–Manville's argument is not that section 1500 always forces an election but that it may effectively and improperly do so where the statute of limitations runs on the district court action before the Claims Court action is con-

cluded. The statutes of limitations for the FTCA and the Tucker Act are 2 and 6 years, respectively. 28 U.S.C. §§ 2401(b), 2501 (1982).

**12.** These Acts raised in *Wessel* were the Tucker Act, 28 U.S.C. § 1491, and the Admiralty Act, 46 U.S.C. §§ 741–752, or, alternatively, the Public Vessel Act, 46 U.S.C. §§ 781–790. *Wessel,* 124 F.Supp. at 637.

not apply since filing in only one court on one Act of Congress might result in the statute of limitations expiring under the other Act of Congress.[13] The Court of Claims rejected this argument and stated:

> Although plaintiff's desired result is an appealing one, we believe the language of 28 U.S.C. 1500 is quite explicit and to defer action in this court would foster just the type of occurrence which section 1500 was enacted to prevent, i.e., the maintaining of two suits against the United States on the same claims and at the same time in two different courts.

124 F.Supp. at 637–38.

The court in *Wessel* additionally reasoned that where a statute was solely jurisdictional, as is section 1500, the tribunal affected could make no exceptions by granting jurisdiction. Quoting *De La Rama S.S. Co. v. United States*, 344 U.S. 386, 390, 73 S.Ct. 381, 383, 97 L.Ed. 422 (1953), the court stated:

> "When the very purpose of Congress is to take away jurisdiction, of course it does not survive, even as to pending suits, unless expressly reserved. * * * If the aim is to destroy a tribunal or to take away cases from it, there is no basis for finding saving exceptions unless they are made explicit."

124 F.Supp. at 638. The issue of whether section 1500 may or may not have caused unexpected results by forcing an election between courts on only one theory or the other does not affect the efficacy of section 1500. The Supreme Court in *Insurance Co. v. Ritchie* stated:

> It is clear, that when the jurisdiction of a cause depends upon a statute the repeal of the statute takes away the jurisdiction. And it is equally clear, that where a jurisdiction, conferred by statute, is prohibited by a subsequent statute, the prohibition is, so far, a repeal of the statute conferring the jurisdiction.

72 U.S. (5 Wall.) 541, 544, 18 L.Ed. 540 (1866) (footnote omitted). 28 U.S.C. § 1491(a)(1) (1982) states, "[t]he United States Claims Court *shall have jurisdiction* ... upon any claim against the United States founded ... upon ... any express or implied contract with the United States...." (Emphasis added.) 28 U.S.C. § 1500 (1982) states, "[t]he United States Claims Court *shall not have jurisdiction* of any claim ... which the plaintiff ... has pending in any other court ... against the United States...." (Emphasis added.) 28 U.S.C. § 1491(a)(1) clearly grants jurisdiction and 28 U.S.C. § 1500 just as clearly takes jurisdiction away where the stated condition is met. There is *no* justifiable reason why the rule expressed by the Supreme Court in *Ritchie* is not applicable where the repeal is conditional rather than absolute.

Johns–Manville cites no authority for rules of statutory construction negating the efficacy of section 1500. Instead, Johns–Manville stresses principles of equity. It argues barring jurisdiction would be "fundamentally unfair," "contrary to a 'reasonable and just construction,'" "would force Johns–Manville to elect, at its peril," a " 'harsh' and 'literal interpretation.' " Principles of equity do not support finding jurisdiction exists. A court may not in any case, even in the interest of justice, extend its jurisdiction where none exists. *Christianson v. Colt Indus. Operating Corp.*, — U.S. —, —, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988) (vacating a decision by the Federal Circuit for lack of jurisdiction).

Appellant next argues that 28 U.S.C. § 1346(a)(2), (b), creating parallel jurisdiction with the Claims Court and district courts in contract claims under $10,000 but exclusive jurisdiction in district courts in all tort claims, was enacted after the original versions of 28 U.S.C. § 1500. Thus, it is argued that Congress created an implicit

---

13. The Admiralty Act is unique in that it has been expressly interpreted to provide an exclusive remedy for all claims falling under its subject matter. The question of which court to file in was simplified by 28 U.S.C. § 1631 (1982) permitting transfers between all federal courts "in the interest of justice" when the first filing was in a court without jurisdiction; *see generally United States v. United Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976).

exception to section 1500. This argument is without merit. 28 U.S.C. § 1346(a)(2), (b) is no limitation on the jurisdiction of the Claims Court. It only creates district court jurisdiction. Nor does section 1500 bear on the jurisdiction of the district courts.[14]

The possibility that the statute of limitations may run on one theory while the other theory is being prosecuted is the only substantive basis for Johns–Manville's argument that section 1346(a)(2), (b) is repugnant to section 1500. As already discussed, Court of Claims precedent which is binding on us has expressly rejected this argument. *Wessel,* 124 F.Supp. at 636. The Supreme Court has also rejected this argument. In *Corona Coal Co. v. United States,* 263 U.S. 537, 44 S.Ct. 156, 68 L.Ed. 431 (1924), the Court affirmed a dismissal by the Court of Claims under section 154 of the Judicial Code, section 1500's predecessor. In *Corona,* as in the instant appeal, the plaintiff argued that the actions were brought to stop the statute of limitations from running. The Supreme Court stated:

> But the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases.

*Id.* at 540, 44 S.Ct. at 156 (citations omitted).

Thus, the Court of Claims in *Wessel* and the Supreme Court in *Corona* have considered and rejected the *ex necessitate rei* statute of limitations argument. Johns–Manville's reliance on *Prillman v. United States,* 652 F.2d 70, 220 Ct.Cl. 677 (1979); *Allied Materials & Equip. Co. v. United States,* 210 Ct.Cl. 714 (1976); and *Brown v. United States,* 358 F.2d 1002, 178 Ct.Cl. 343 (1966), for the contrary proposition is not persuasive. In both *Brown* and *Prillman* section 1500 was not applicable because of the *Casman* exception which applies where a different type of relief is sought in the district court (equitable) from that sought in the Court of Claims (money).

*See Casman v. United States,* 135 Ct.Cl. 647 (1956). In the present case, however, the relief sought from both courts is money, but under different theories. The operative facts of the claims are the same.

In *Brown* the plaintiff originally sought monetary damages and equitable relief in the district court. However, the district court dismissed the plaintiff's monetary claim for lack of jurisdiction. Thus, only the equitable count remained in the district court, a cause over which the Court of Claims had no jurisdiction. Also, in *Prillman* the plaintiff requested from the district court both equitable and monetary relief. The request for back pay was in excess of $10,000. *Prillman,* 652 F.2d 70, 220 Ct.Cl. at 678. As stated in 28 U.S.C. § 1346(a)(2) and as recognized by *Prillman, id.* at 679, a district court's concurrent jurisdiction with the Claims Court is limited to claims not exceeding $10,000. Thus, both *Brown* and *Prillman* merely follow the exception to section 1500 originating in *Casman* and do not support any other exception to section 1500.

The Court of Claims stated in *Allied:*

> Since we have no jurisdiction of suits under the Anti–Trust laws, suits under state common law for tortious interference with contracts, or suits under 40 U.S.C. Sec[s]. 488 and 489, and the District Court by 28 U.S.C. Sec. 1346(2), has no jurisdiction of breach claims over $10,-000, plaintiff has no election. In neither court could it combine all its claims. In these circumstances Sec. 1500 does not support the so-called motion to dismiss.

210 Ct.Cl. at 715–16.

The precedent and rationale expressed by *Allied* indicates that decision was only following the established exception under *Casman* to section 1500. The *Allied* decision cites only two precedents, *Matson Nav. Co. v. United States,* 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932), and *Casman,* 135 Ct.Cl. at 647. *Matson* held that

**14.** *Cf.* 1 U.S.C. § 109 (1982) (reversing common law rule that a later criminal statute implicitly repeals an earlier statute where the later statute embraces the whole subject matter of the first statute and contains no savings clause. *E.g., United States v. Tynen,* 78 U.S. (11 Wall.) 88, 92, 20 L.Ed. 153 (1870).

section 1500's predecessor, section 154 of the Judicial Code of 1911, could not be expanded to bar pending suits on the same claim against the United States since the language of the section only referred to pending suits against agents of the United States.[15]

It is not evident to us that *Allied* intended to extend the exception established in *Casman* to cover pending cases seeking monetary relief so long as the Court of Claims had no jurisdiction over the legal theories asserted in the district court. *Allied* does not state the plaintiff is seeking monetary relief in the pending district court cases. Nor does *Allied* discuss any of the precedents which would need to be overruled or distinguished before reaching the holding Johns–Manville argues *Allied* reaches. In summary, we find Johns–Manville's reliance on *Allied* unfounded since it does not clearly hold section 1500 is inapplicable where the pending suit seeks monetary relief in both courts on the same operative facts.

In conclusion, we hold that under 28 U.S.C. § 1500 the relief sought by Johns–Manville in the Robinson case is based on a "claim for or in respect to" the claims brought by Johns–Manville in the Claims Court in Nos. 465–83C, 688–83C, and 1–84C.[16]

## II. *The Effect of a Stay on the Interpretation of "[P]ending"*

Johns–Manville argues that since the Robinson and third-party complaint cases are stayed they are not "pending" as required by section 1500. Therefore, it is contended that section 1500 is inapplicable even if the claims are the same. However, the use of "pending" in section 1500 is unambiguous.

The language of that provision is so clear and its meaning so plain that no difficul-

ty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. It is elementary that where no ambiguity exists there is no room for construction. Inconvenience or hardships, if any, that result from following the statute as written must be relieved by legislation.... Construction may not be substituted for legislation.

*United States v. Missouri Pac. R.R.*, 278 U.S. 269, 277–78, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929). This is the standard rule of statutory construction which has been followed innumerable times both by the Supreme Court and by this court and its predecessor courts.

■ The plain meaning of "pending" includes cases which have been filed but stayed. The Court of Claims has considered this issue. In *National Cored Forgings Co. v. United States*, 132 F.Supp. 454, 132 Ct.Cl. 11 (1955), the plaintiff stipulated for a stay of proceedings in the district court until final action had been taken in the Court of Claims. *Id.* at 457. The Court of Claims held section 1500 applied to bar jurisdiction since the same claim was pending in a district court. Accordingly, we hold the Robinson case is pending under section 1500.

## CONCLUSION

Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court. *Johns–Manville Sales Corp. v. United States*, No. C81 4561 RFP (N.D.Cal. filed Dec. 7, 1981) (the Robinson case), does contain pending claims for or in respect to

---

**15.** In 1948 the language was changed to include pending suits against the United States as well as suits pending against agents of the United States. Act of June 25, 1948, ch. 646, 62 Stat. 942.

**16.** It is not necessary to the disposition of this case to discuss whether the Eastern District of

Virginia's third-party complaints also contain "claims for or in respect to" claims in the Claims Court cases. Our discussion of section 1500 as it applies to "before-filed" cases such as the Robinson cases applies to all similar cases seeking the same relief.

the Claims Court case Nos. 465–83C, 688–83C, and 1–84C. 28 U.S.C. § 1500 bars jurisdiction of the Claims Court over claims pending in a prior-filed case in another court. Therefore Claims Court jurisdiction is barred over case Nos. 465–83C, 688–83C, and 1–84C. An exception exists under *Casman v. United States*, 135 Ct.Cl. 647 (1956), where a type of relief not available in the Claims Court is sought in the other court. This exception is inapplicable in the instant appeal. Finding neither legal error nor abuse of discretion in the order of the Claims Court, we affirm.

AFFIRMED.

NICHOLS, Senior Circuit Judge, dissenting.

With all respect I cannot join in this per curiam opinion, and I dissent instead for the reasons given below.

O.W. Holmes, *J.* wrote for the Court in *United States v. Emery*, 237 U.S. 28, 32, 35 S.Ct. 499, 500, 59 L.Ed. 825 (1915):

[It is an] inadmissible premise that the great act of justice embodied in the jurisdiction of the Court of Claims is to be construed strictly and read with an adverse eye. [Citations omitted.]

The "great act of justice" means, of course, the Tucker Act, 24 Stat. 505, Act of March 3, 1887, now 28 U.S.C. § 1491, and other sections, as selected by codifiers. Holmes' language was not mere words; it explained a decision construing the Tucker Act to embrace suits for tax refunds previously held not consented to. *See* II *Court of Claims History* 43 (1976). A view contrary to that of Holmes as often or more often prevails, of which the type is the pronouncement in *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976), repeating prior statements there quoted:

[I]n a Court of Claims context, * * * a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." [Citations omitted.]

The instant per curiam decision reflects the same tension between the two opposing ideas and it is reflected also in the cases it cites, some of which appear guided by the former, and some by the latter, principles. Title 28 U.S.C. § 1500 is not derived from the general revision and strengthening of the jurisdictional, consent to be sued, and limitation on the consent to be sued, provisions, all embodied in the 1887 Tucker Act. As the per curiam indicates, it was at that date in the revised statutes and apparently was overlooked by the Tucker Act's authors, though other limitations were not: for example, the prohibition on suits on pensions, right next to section 1500 in the present code, 28 U.S.C. § 1501, and on suits based on treaties, now 28 U.S.C. § 1502. The codifiers have not overlooked section 1500, but how much consideration by Congress it really has received since 1868 is unclear. The purpose was then stated, but that purpose has evaporated since at present the United States is considered a necessary party to suits for money that will have to be paid out of the United States Treasury. It is to be supposed Congress has maintained section 1500 in the statute books all these years it must be for other reasons, but we are in the dark as to what these other reasons might be.

This is particularly important because the word "claim" is one of the most protean words in the language, and any statute built, as section 1500 is, around the word "claim," is necessarily ambiguous. Interpretation of section 1500 can and does vary according to whether two differing assertions of right in two courts are deemed one claim or two.

As we have no light cast by the Congress, we look to construing court decisions, and they are numerous. Manifestly, section 1500, if not part of the Tucker Act, has been virtually made so by the codifiers, and the ambivalence of the courts is fully applicable. It is obvious that section 1500 is a serious roadblock for claimants against the United States if, as here, they have some claims enforceable only in the Court of Claims/Claims Court, and what may be other claims, or may be the same claims, enforceable only in courts other than the Court of Claims/Claims Court. The claimants then will have to show, if they can,

that what may be the same claims for some purposes may well be different claims for other purposes. One's idea of what is a different claim, and what is the same claim, may be influenced consciously or unconsciously by one's perception as to whether one's duty as a judge is to facilitate treating the claimant against the government in all respects the same as a claimant against General Motors, so far as the statutes will allow, or to meet any assertion the government has waived its sovereign immunity with crabbed hostility. The former is the Holmsian approach, the latter that of the per curiam opinion herein. We have the statute, and we must give it effect, but what effect we give it depends on how we construe it where it is ambiguous.

In *Casman v. United States*, 135 Ct.Cl 647 (1956), the Court of Claims confronted a problem since eliminated: the Tucker Act, as it then was, consented to suits for back pay in the Court of Claims by employees alleging they were wrongfully fired, but they had to go to United States District Courts to get the order of reinstatement which most such claimants wanted. They could sue in the district court for money damages also under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), but if they did, they would have to waive any money claimed over $10,000. The Court of Claims held section 1500 did not bar the maintenance of both suits in this situation, explaining section 1500 was only intended to "require an election," quoting *Matson Nav. Co. v. United States*, 284 U.S. 352, 355–56, 52 S.Ct. 162, 164, 76 L.Ed. 336 (1932), and deeming that the fired employee had no election and therefore section 1500 did not apply to him. That was a holding the claims were not the same because election was not possible.

Here by *Casman* reasoning, the claimant, Johns–Manville, has no election either, because it cannot sue the United States on its tort claim in the Claims Court, or on its contract claim in any other court, in view of its magnitude. The court does not so reason because apparently it sees the *Casman* decision and its progeny as a sort of arbitrary happening inexplicable under the kind of analysis it deems the only kind possible.

*Casman* is, however, cited and followed in *Truckee–Carson Irrigation District*, 223 Ct.Cl. 684 (1980). I see *Casman* as merely and simply Holmsian. The court herein professes to see a difference between claims based on the same "operative facts" if one seeks money relief and the other injunctive relief, that does not exist if one seeks contract relief and the other tort relief. The real explanation I fear is that the court construes the word "claims" in a manner unfavorable to the claimant because it elects to view the statute "strictly and with an adverse eye."

The court insists on repeating that the tort and contract claims of Johns–Manville against the government are "based on the same operative facts." If the "operative facts" in this situation are the facts the claimant must prove to establish the claims, obviously they are not the same. For a contract claim the "operative facts" must include a showing that a contract was made, express or implied in fact. No such requirement exists in a tort case, but in the normal situation, which this is, the action proceeds on a negligence theory and the "operative facts" will include a showing that a duty of care arose, not from contract, but from circumstances where injury to others was foreseeable.

*British American Tobacco Co. v. United States*, 89 Ct.Cl. 438 (1939), *cert. denied*, 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940), is one where no such difference existed in the "operative facts." The case was one of the many "gold clause" cases that followed the United States going off a gold-backed currency in the 1930's. Plaintiff had delivered gold to the Federal Reserve Bank and received currency, but not as much as it asserted the gold was worth. It sued in the district court on a tort theory, alleging not negligence, but an unlawful conversion. It sued in the Court of Claims on a taking theory. It is clear the difference was not in the operative facts, or any of them, but only in the legal theory pursued. The court said at 440 "[t]he facts existing and operating in both cases are the same." The court holds a difference in legal theory does not save claimant from

section 1500, as it now is, if the "operative facts" are the same. It is evident the difference between the claims would be whether the currency paid for the gold was the lawful amount. If it was, by claimant's legal theory it was a taking case; if it was not, it was a conversion.

I do not think *British American* can fairly be taken as authority that tort and contract claims are the same claim for section 1500 purposes where only some of the "operative facts" are the same and others are different. It is clear that section 1500 cannot be frustrated by an artful pleader who puts different legal labels on what really is the same claim. There is no reference to the question of election or to the possibility *British American* would have had to drop one or the other of its legal theories, but the Court of Claims, by the date of *Casman*, had by then tumbled to the notion that section 1500 only requires an election when parties have an election. It learned that from *Matson Nav. Co., supra*, a later case. So far as in *British American*, the court proceeded to a decision in disregard of whether that claimant had an election, the precedent may be treated as modified by later cases.

*Los Angeles Shipbuilding & Drydock Corp. v. United States*, 152 F.Supp. 236, 138 Ct.Cl. 648 (1957), is not a case where the court disregarded the nonexistence of an election. It involved, as this court states, claims for tax refunds in the Court of Claims and in the district court for some of the same years on two different legal theories. Plaintiff could have pursued its case on both theories in either court as the Court of Claims said at 652:

> The plaintiff could have pursued its claim on the theory of account stated alternatively to its other theories of recovery in the District Court or in the Court of Claims. Either course of action was available to plaintiff. It made its choice of the tribunal desired, the District Court, and therefore cannot now be heard in this court.

My conclusion is that because of the ambiguity inherent in the word "claims," claims provable by different facts, and characterized respectively as tort and contract claims, would have been treated by the old Court of Claims as different claims if a claimant could not sue on both theories in any one court. This court's decision, to the contrary, is a departure from precedent and an unseemly swing to the policy of erecting roadblocks against claimants seeking to assert a government liability, though such blocks would not exist in the case of a suit against a private company. This is particularly painful in the present case as the results of many months of trial are voided and made useless. If Congress intended this, we have no choice, but we make Congress look extremely bad. If it did not intend this, we take on ourselves a heavy responsibility.

The court is also unacceptably hostile to jurisdiction in that it disregards this question: suppose Johns–Manville has incurred expense and pursues indemnification for settling with asbestosis sufferers A, B, and C. Is this one claim or three? As a further complication: suppose the payments to A, B, and C are sued for in the district court, but left out of the Claims Court suit and instead Johns–Manville pursues indemnification in the Claims Court for settling with D and E? I am inclined to think this court would say it is all one claim under this hypothetical, because it would say the "operative facts" were the same. To this I emphatically disagree. I think the asserted right to indemnification is a separate claim for each person settled with. Even if I am wrong in making anything turn on the plaintiff not having an election, I would still think the Claims Court should be directed to allow amendment so that indemnification for settling with individuals can be pursued in one court, or the other, even if not allowed in both.